UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY T. REYES, ET AL., | No. C-04-3079 CW (JCS) |
| Plaintiffs, | |
| v. | **REPORT & RECOMMENDATION RE PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT** |
| CLINTON L. WATSON, ET AL., | **[Docket No. 156]** |
| Defendants. | |

## I.  INTRODUCTION

Plaintiffs, Anthony Reyes, Mary Reyes and the Reyes Trust, filed this action on July 28, 2004. In their complaint, they named as defendants Clinton L. Watson, Zkara.com, Flex, Inc., and the George and Mary E. Watson Trust ("the Watson Trust"). On April 6, 2005, Judge Wilken ordered entry of default as to Defendants Zkara.com, Flex, Inc. and the George and Mary E. Watson Trust ("the Entity Defendants") on the basis that those defendants failed to answer the complaint through counsel qualified to practice law, despite the Court's explicit order that such an answer be filed no later than December 6, 2004. In the April 6, 2004 order, the Court stated that Plaintiffs would be permitted to bring a motion for default judgment when the claims against Defendant Clinton Watson were resolved.

In an order filed December 6, 2005, Judge Wilken granted Plaintiffs' Motion for Terminating Sanctions Against Defendant Clinton L. Watson on the basis of Watson's failure to obey numerous court orders and to comply with discovery rules. Pursuant to that order, default was entered against Watson and the matter was referred to the undersigned magistrate judge "to hold a

1

hearing to determine damages." December 6, 2005 Order. Plaintiffs now bring a Motion for Entry of Default Judgment ("the Motion"), seeking entry of default judgment as to all defendants.

A hearing was held on March 10, 2006. Plaintiffs filed supplemental materials on March 17, 2006. For the reasons stated below, it is recommended that the Motion be GRANTED in part and DENIED in part.

## II.   BACKGROUND

Plaintiffs filed this action against Clinton Watson, Zkara.com, Flex, Inc. and the Watson Trust. According to Plaintiffs, the latter three entities are operated by Watson and are alter egos of Watson. Complaint, ¶¶ 7-9. Plaintiffs allege that in October 2001, Anthony Reyes entered into an oral agreement ("the Partnership Agreement") with Watson concerning ownership and development of technology relating to Voice Over Internet Protocol Telephony ("the VOIP technology"). Complaint, ¶ 11. According to Plaintiffs, they agreed to create a joint enterprise with Watson in which Plaintiffs would finance the further development by Watson of the VOIP technology, with the goal of eventually creating one or more legal entities to market and sell products incorporating that technology and sharing in the resulting profits. *Id*. On the question of ownership of the technology itself, Plaintiffs state in their complaint that under the oral agreement, "Watson developed and owned the VOIP technology." *Id*. Plaintiffs further allege that under the agreement, "Watson would continue to make further developments and related improvements to and commercial implementations of the VOIP technology which would be co-owned by Reyes and Watson (the "Partnership IP") . . ." *Id.* (emphasis added).

On June 6, 2002, Watson filed a patent application entitled, "Mechanism for Implementing Voice Over IP Telephony Behind Network," listing Watson as the inventor. Complaint, ¶ 12.[1] That patent ultimately issued on January 6, 2004. *See* Complaint, Ex. A (U.S. Patent No. 6,674,758 B2 ("the '758 patent").

---

[1] Although the Complaint listing the filing date as June 18, 2002, the patent that was ultimately issued, which is attached to the Complaint as Exhibit A, reflects that the application was filed on June 6, 2002.

1    On June 26, 2002, the Watson Trust and the Reyes Trust entered into a Bill of Sale.
2 Complaint, ¶ 13. *See also* Opposition, Ex. A.[2] The Bill of Sale described a "certain" Voice-Over
3 Internet-Protocol (VOIP) technology that was covered by Watson's patent application. Opposition,
4 Ex. A. Under the Bill of Sale, the Watson Trust granted the Reyes Trust "perpetual and exclusive
5 rights to market on a worldwide basis said VOIP . . . technology." *Id*. The Bill of Sale was signed
6 by Mary Reyes as trustee for the Reyes Trust and Clinton Watson as trustee for the Watson Trust.
7 *Id*.

8    On February 3, 2003, Watson and Reyes formed two Hong Kong corporations to carry out
9 the Partnership Agreement: NXG International, Ltd. ("NXG") and iVoice Holdings, Ltd. ("iVoice").
10 *Id*., ¶ 14. On November 3, 2003, Reyes and Watson entered into a Memorandum of Understanding
11 with Transnational Diversified Corporation ("TDC"), according to which TDC was to invest
12 $10 million in venture capital in NXG and iVoice in return for a 50% interest in both companies.
13 *Id*., ¶ 15. Shortly thereafter, TDC funded the first $1 million tranche. *Id*.

14    On August 11, 2003, Mary Reyes and Clinton Watson entered into another agreement (the
15 "Agreement" or the "August 11, 2003 Agreement"). The Agreement states that "the parties by this
16 represents [sic] that they are co-owners to the Voice-Over Internet-Protocol Technology. . . ."
17 Opposition, Ex. B, ¶ 2. It goes on to describe the VOIP technology as the technology described in
18 the '758 patent application (referred to as Attorney Docket No. 6064.P001).[3] *Id*., ¶ 2.1. Finally, the

---

[2] In their Sur-Reply, Plaintiffs did not deny receipt of the Opposition or the attached documents. Nor did they object on the basis that any of attached documents were not authentic. Rather, Plaintiffs acknowledged receipt of the Opposition, including the exhibits. *See* Sur-Reply at 2 (characterizing Defendant's Opposition as nothing more than "a series of 'Objections to Plaintiffs' Motion for Default Filed as an Affidavit' . . . with attached exhibits. . ."). At oral argument, however, Plaintiffs' counsel stated that they had not received any documents from Defendant. Because this statement is clearly contradicted by Plaintiffs' own brief, the Court concludes that it was the result of a misunderstanding on the part of Plaintiffs' counsel regarding the documents to which the Court was referring at oral argument. Therefore, the Court concludes, based on Plaintiffs' failure to object, that the agreements attached to Defendants' Opposition are authentic. The Court notes that subsequent to the hearing, at which this issue was first raised, Plaintiffs have failed to notify the Court that any of the documents filed as part of Defendant's February 9, 2006 Opposition are not authentic – even though Plaintiffs filed supplemental materials on March 17, 2006.

[3] The Court takes judicial notice of the fact that Attorney Docket No. 6064.P001 corresponds to the '758 patent, as is reflected on the website of the United States Patent Offices at www.uspto.gov. *See* Fed. R. Evid. 201 (permitting court to take judicial notice of facts that are "capable of accurate and

United States District Court
For the Northern District of California

1  Agreement states that Watson is the "inventor-technology provider in a joint co-ownership by virtue
2  of a Deed of Assignment entered into with Mary Reyes, dated February 3, 2002 . . . " *Id*., ¶ 2.2.  The
3  Agreement is signed by Reyes and Watson. *Id*.[4]  There is no mention in the Agreement of the
4  parties' respective trusts. *Id*.

5  According to Plaintiffs, Watson controlled the development and implementation of the VOIP
6  technology through computers located in Missouri and California, and possibly other locations.
7  Complaint, ¶ 16.  On November 30, 2003, Watson threatened to block access to the VOIP
8  technology if Plaintiffs did not pay him $500,000.00, to which he asserted he was entitled under the
9  agreements described above.  In order to meet the TDC funding conditions, Reyes authorized
10 payment of $200,000.00 to Watson from NXG.  *Id*.  Plaintiffs allege that they paid Watson
11 $617,000.00 between October 2001 and February 2004, which included the purchase price for the
12 VOIP technology, wages and benefits, and development and commercial implementation.
13 Complaint, ¶ 18.  Plaintiffs further allege that Watson has continued to use the VOIP technology and
14 has failed to meet the terms of the Partnership Agreement, the June 26, 2002 Bill of Sale and the
15 August 11, 2003 Agreement. *Id*., ¶ 20.

16 In their complaint, Plaintiffs asserted the following claims against Defendants: 1) breach of
17 the oral Partnership Agreement;  2) breach of Co-Ownership Agreement;  3) breach of fiduciary duty
18 (as to Watson only); 4) fraud and deceit; 5) negligent misrepresentation; 6) unfair competition in
19 violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and 7) declaratory relief.  Plaintiffs requested
20 compensatory and punitive damages, attorneys' fees and costs, and injunctive relief.

21 In the Motion, Plaintiffs seek entry of default judgment as to all Defendants.  Plaintiffs
22 request $652,921.06 in damages, $81,483.75 in attorneys fees, and a declaration that Plaintiffs are
23 equal co-owners of the VOIP technology, including the '758 patent.

---

ready determination by resort to sources whose accuracy cannot reasonably be questioned").

[4] Also attached to Defendant's Opposition is an addendum to the August 11, 2003 Agreement that purports to transfer ownership rights to Mary Reyes.  Opposition, Ex. B.  That document, however, was not signed by Watson. *Id*. *See also* Supplemental Declaration of Mary Reyes in Support of Motion for Entry of Default Judgment ("Reyes Suppl Decl."), ¶ 18.

4

1    In his Opposition, Defendant challenges many of the factual allegations in Plaintiffs'
2 complaint, including the allegation that the VOIP technology is co-owned.  Defendant also
3 challenges various rulings by Judge Wilken.  Attached as exhibits to the Opposition are copies of
4 various documents referenced in Plaintiffs' complaint.[5]

5    Because the Opposition was filed over a week late, Plaintiffs were permitted to file a Sur-
6 Reply.  *See* Order Granting in Part and Denying in Part Defendant's Motion to File Late Opposition
7 and for Withdrawal of Judge Spero and Granting Defendant's Motion to Call Witness, Filed
8 February 14, 2006.  Plaintiffs assert in their Sur-Reply that the points raised in Defendant's
9 Opposition are an attempt to argue the merits of his case and that this attempt should be rejected
10 because Judge Wilken has already determined that default should be entered against Defendants.

11 **III.   ANALYSIS**

12    **A.   Legal Standard**

13    Under Federal Rule of Civil Procedure 55(b)(2), the court may enter a default judgment
14 where the clerk, under Rule 55(a), has already entered the party's default based upon a failure to
15 plead or otherwise defend the action.  Alternatively, default judgment may be entered under Rule
16 37(b)(2) as a sanction.  In this case, default was entered against Zkara.com, Flex, Inc., and the
17 Watson Trust under Rule 55(a) for failure to defend.  In addition, the Court has determined that
18 default judgment shall be entered as to Watson as a sanction under Rule 37(b)(2).  The remaining
19 questions are: 1) should default judgment be granted as to the Entity Defendants; and 2) what
20 remedy is appropriate as to all Defendants.

21    The district court's decision to enter a default judgment involves some discretion.  *Lau Ah*
22 *Yew v. Dulles*, 236 F.2d 415 (9th Cir. 1956) (affirming district court's denial of default judgment).
23 In determining whether to enter default judgment pursuant to Rule 55(b) of the Federal Rules of
24 Civil Procedure, courts consider a wide range of factors, including: "(1) the possibility of prejudice
25 to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint,

---

[5] Prior to the hearing, Defendant Watson sought leave to present witnesses to testify regarding the merits of Plaintiffs' claims.  The Court denied Watson's request but notified him that it would consider any sworn declarations he wished to file in connection with the Motion.  Watson did not file any declarations by his proposed witnesses.

1  (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986); *see also* Wright & Miller, *Federal Practice and Procedure*, Civil § 2685.[6]

Where a default judgment is deemed appropriate, the factual allegations of the complaint, except those relating to damages, are taken as true. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). However, the court "must still review the facts to insure that the [p]laintiffs have properly stated claims for relief." *Doe v. Qi*, 349 F. Supp. 2d 1258, 1272 (N.D. Cal. 2004); *see also Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (holding that allegations concerning existence and terms of a contract did not support liability where allegations were contradicted by actual contract). Further, the Court has discretion to require that a plaintiff seeking entry of default judgment present proof of any fact alleged as a basis for liability. *Apple Computers, Inc. v. Micro Team*, 2000 WL 1897354 (N.D. Cal.) (citing 10A Wright, Miller & Kane, § 2688 at 59-61 and *Quiridongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992)).

Where a plaintiff has established liability, the plaintiff must then present evidence to establish the amount of damages. *See Geddes*, 559 F.2d at 560. More broadly, where other types of relief, such as an injunction or declaratory relief, are sought, the district court may not grant such relief without making findings indicating that the non-defaulting party is entitled to it. *Sec. and Exch. Comm'n v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975) (holding that district court had abused its discretion in granting permanent injunction on the basis of default without making findings that permanent injunction was justified).

### B.  The Entity Defendants

Plaintiffs' claims against the Entity Defendants are based on their allegation that these

---

[6] Where default judgment is entered as a sanction pursuant to Rule 37(b), an additional set of factors is considered. These factors were addressed in Judge Wilken's December 6, 2005 Order, in which the Court granted Plaintiffs' motion for terminating sanctions.

Defendants are alter egos of Watson. In addition to the allegations of the complaint, Plaintiffs provided the Court with evidence that Watson asked Plaintiffs to make payments to him through both the Watson Trust and Flex, Inc. *See* Reyes Supp. Decl., ¶¶ 5, 9 & Exs. 1, 2. On the basis of this evidence, the Court concludes that the Watson Trust and Flex, Inc. should be liable to the same extent Watson is liable on Plaintiffs' claims.

On the other hand, Plaintiffs have provided no specific facts in support of their allegation that Watson is an alter ego of Zkara.com. In the supplemental declaration filed by Plaintiffs, the only evidence regarding Zkara.com is a statement, based on "information and belief" that Watson is the alter ego of this entity. In the absence of any specific facts supporting this legal conclusion, the Court recommends that default judgment be denied as to Zkara.com.

**C.  Liability**

Plaintiffs assert seven claims against Defendants. Below, the Court addresses the allegations and, where applicable, the evidence in the record relevant to each claim.[7]

    1.    Breach of Partnership Agreement

Plaintiffs allege that Watson breached the Partnership Agreement in a number of ways, including by failing to prepare training manuals, train employees, and turn over know-how and ownership of the VOIP technology as agreed. Complaint, ¶ 25. The allegations are sufficient to support liability on this claim.

    2.    Breach of the Bill of Sale and August 11, 2003 Agreement[8]

Plaintiffs allege that Watson breached the terms of the Bill of Sale and the August 11, 2003 Agreement by preventing Plaintiffs from exercising their exclusive worldwide right to market the VOIP technology, in particular, by failing to provide technical support and directly competing with

---

[7] As noted above, the court has the discretion to review evidence in support of a default judgment motion. On the other hand, Plaintiffs should not be required to litigate claims on which Defendants have defaulted. Therefore, while the Court reviews the legal sufficiency of Plaintiffs' claims, it declines to revisit issues Judge Wilken has already resolved. The Court also rejects Defendant Watson's attempt to challenge Plaintiffs' factual allegations, which are deemed to be true by virtue of Defendant's default, except to the extent that these factual disputes are relevant to the question of remedy.

[8] Plaintiffs refer to these two agreements collectively as the "Co-Ownership Agreement."

Plaintiffs by selling the technology himself.  Complaint, ¶ 30.  Plaintiffs' allegations are sufficient to support liability on this claim.

### 3. Breach of Fiduciary Duty

Plaintiffs' claim for breach of fiduciary duty is based on the alleged breach of the Partnership Agreement.  To the extent the Court finds that there is liability as to the breach of the Partnership Agreement, liability is also established with respect to the claim for breach of fiduciary duty.

### 4. Fraud and Deceit

Plaintiffs allege that Defendant intentionally misled them with respect to his intentions as to the VOIP technology.  Under Rule 9 of the Federal Rules of Civil Procedure, fraud must be alleged with particularity.  The Court concludes that Plaintiffs' allegations are sufficient to find liability on this claim.

### 5. Negligent Misrepresentation

Plaintiffs allege that Defendant negligently misrepresented his intentions with respect to the VOIP technology.  Plaintiffs' allegations are sufficient to establish liability.

### 6. Unfair Competition

Plaintiffs allege that Defendants' violation of the Partnership Agreement, the Bill of Sale and the August 11, 2003 Agreement constitute unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq*.  Section 17200 prohibits business practices that are "unlawful, unfair, or fraudulent."  Courts have held this section is violated when a defendant engages in any one of these three categories of conduct.  Plaintiffs fail to allege conduct that is either "unlawful" or "fraudulent" under § 17200.  *See Accuimage Diagnostics Corp. v. Teraracon, Inc.*, 260 F. Supp. 2d 941, 954 (N.D. Cal. 2003)(holding that "unlawful" conduct refers to "violations of law, not contract"); *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211) (holding that to state a claim for "fraudulent" conduct under § 17200 a plaintiff must allege that "members of the public are likely to be deceived").  Plaintiffs do, however, allege "unfair" conduct.  *See Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632 (1996) (holding that an unfair business practice occurs when a practice "offends an established public policy or when the practice is immoral, unethical,

oppressive, unscrupulous or substantially injurious to consumers"). Therefore, Plaintiffs' allegations are sufficient to support liability on this claim.

### 7. Declaratory Relief Claim

Plaintiffs bring a declaratory relief claim seeking a declaration concerning the ownership of the VOIP technology described in the '758 patent. This claim is discussed below, in the discussion of the remedy sought by Plaintiffs.

**C.   Remedy**

Plaintiffs seek damages in the amount of $652,921.06, attorneys' fees and declaratory relief in the form of a declaration that Plaintiffs and Watson are co-owners of the VOIP technology, including the '758 patent.

### 1. Damages

Plaintiffs seek to recover the amounts they paid Watson under the contracts in the form of wages and benefits ($133,366.20), capitalization for the partnership ($284,911.16), expenditures for partnership property ($34,643.70) and a "venture funding bonus" ($200,000.00). *See* Declaration of Mary Reyes in Support of Motion for Entry of Default Judgment ("Reyes Decl."). Plaintiffs have supported their request with detailed invoices. *See id.* Having carefully reviewed the evidence provided, the Court finds that Plaintiffs' damages are support by the evidence and should be awarded in full.

### 2. Attorneys' Fees

Plaintiffs request attorneys' fees pursuant to Cal. Bus. & Prof. Code §§ 17200 *et seq*. However, the unfair competition law does not provide for attorneys' fees. *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158 (2002). A prevailing defendant in an unfair competition action *may* seek attorneys' fees as a private attorney general pursuant to Cal. Code Civ. Proc. § 1021.5. That section allows a court to award attorneys' fees to a prevailing party where "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons." Here, however, Plaintiffs do not allege that a significant benefit has been conferred on the general public. Nor is there evidence in the record of such a benefit. Therefore, Plaintiffs' request for attorneys' fees should be denied.

### 3. Declaratory Relief

Plaintiffs seek declaratory relief in the form of a declaration that "Plaintiffs and defendant Watson are equal co-owners of the VOIP Technology, including United States Patent No. US 6,674,758 B2." Plaintiffs' Proposed Order. The Court concludes that Plaintiffs are entitled to declaratory relief based on the August 11, 2003 Agreement, signed by Watson and Reyes, which states that Mary Reyes became a co-owner of the VOIP technology under a deed of assignment dated February 3, 2002. Opposition, Ex. B; *see also* Reyes Supp. Decl., ¶ 15 (stating that the right to co-ownership was transferred to Mary Reyes in a deed of assignment dated February 3, 2002). Although the deed of assignment is not in the record, the Court concludes that the signed August 11, 2003 is sufficient to evidence the transfer.[9]

However, it is recommended that any declaratory relief afforded Plaintiffs make clear that co-ownership is between Watson and Mary Reyes only. Plaintiffs have pointed to no evidence or allegations suggestion that any of the other Plaintiffs are co-owners. In addition, because the VOIP technology at issue is not anywhere clearly defined, it is recommended that the co-ownership rights be declared *only* as to the '758 patent. It is evident from the August 11, 2003 Agreement that the term "VOIP technology" at a minimum referred to the technology referred to in the '758 patent.

Thus, declaratory relief should be afforded in the form of a declaration that Mary Reyes and Defendant Watson are equal co-owners of the VOIP technology described in US Patent No. 6,674,758 B2.

### III. CONCLUSION

Default judgment should be entered as to all Defendants except Zkara.com. It is recommended that the Court award the following relief: 1) $652,921.06 in damages; and 2) declaratory relief in the form of a declaration that Plaintiff Mary Reyes and Defendant Clinton

---

[9] Plaintiffs have also provided minutes of a June 27, 2002 meeting of the NRW Board of Directors meeting which state, "It is reported by Clinton Watson that he has sold the rights to his two patents for plug & play VOIP phones and the voting rights of his shares to Ms. Mary Reyes for $250,000 USD which was paid in full to Mr. Watson on June 26, 2002." Reyes Supp. Decl., Ex. 6.

Watson are equal co-owners of the VOIP technology described in United States Patent No. 6,674,758 B2.  It is recommended that Plaintiffs' request for attorneys' fees be DENIED.

Dated: April 3, 2006

                              JOSEPH C. SPERO
                              United States Magistrate Judge